# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | | |
|---|---|---|
| **TONY AL-BESHRAWI,** | ) | Case No. 5:06cv369 |
| | ) | |
| **Plaintiff,** | ) | **JUDGE SARA LIOI** |
| | ) | |
| v. | ) | |
| | ) | **MEMORANDUM OPINION** |
| **ELAINE L. CHAO, Secretary, U.S.,** | ) | |
| **Department of Labor, et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

Plaintiff Tony Al-Beshrawi (plaintiff) brings this pro se employment action against defendants[1] seeking to recover damages under a variety of federal statutes, including the Federal Employees' Compensation Act (FECA), 5 U.S.C. § 8101 *et seq.*, the Whistleblowers Protection Act (WPA), 5 U.S.C.§ 1213 *et seq.*, the Privacy Act, 5 U.S.C. § 552a *et seq.*, the Rehabilitation Act, 29 U.S.C. § 791 *et seq.*, and the Fair Labor Standards Act (FLSA), 29 U.S.C. §201 *et seq.*[2] Plaintiff also alleges violations of the First, Fourth, and Fifth Amendments.

Pursuant to Fed. R. Civ. P. 56, defendants seek summary judgment on all claims in the

---

[1] In his Third Amended Complaint, plaintiff names as defendants the U.S. Department of Workers' Compensation Programs, the U.S. Secretary of Commerce, Carlos M. Guiterrez, the U.S. Secretary of Labor, Elaine L. Chao, several employees from the Office of Workers' Compensation Programs (OWCP), and the United States of America. Throughout this Memorandum Opinion, the term "defendants" shall be used to refer to all party defendants collectively. Where individual defendants are discussed, the Court will so note.

[2] This matter was originally assigned to the Honorable James S. Gwin. The action was reassigned to the docket of the Honorable Sara Lioi on March 19, 2007.

Third Amended Complaint.³ (Docket No. 53). Plaintiff has filed a brief in opposition,⁴ and defendants have replied.⁵ (Docket Nos. 70, and 76, respectively). In connection with their dispositive motion, defendants have also filed, pursuant to Fed. R. Civ. P. 11, a motion for sanctions. (Docket No. 94). Plaintiff opposes this motion, as well. (Docket No. 100). The Rule 11 motion is resolved in a separate order, which is filed contemporaneously with this Memorandum Opinion.⁶

## I. FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff is no stranger to litigation. In fact, this lawsuit marks the fourth time that plaintiff has sought judicial review of the circumstances surrounding his employment with, and discharge from, the United States Patent and Trademark Office (USPTO). As such, to fully

---

³Defendants' motion styled, "Motion to Dismiss, or in the Alternative, for Summary Judgment," was originally treated as a motion to dismiss but was converted to a motion for summary judgment by the Court on February 22, 2007. (Docket No. 127).

⁴Plaintiff's responsive brief was erroneously styled "Motion to Deny Defendants' Motion to Dismiss, or in the Alternative, for Summary Judgment." (Docket No. 70).

⁵After the Court converted defendants' motion to dismiss to a motion for summary judgment, the parties were permitted to file supplemental briefs. (Docket Nos. 129 and 130).

⁶Also pending is plaintiff's motion for default judgment. (Docket No. 92). Inasmuch as defendants' summary judgment motion is properly before the Court, plaintiff's motion is denied.

understand the issues raised herein, it is important to review both the factual and procedural history of this action, as well as that of numerous prior lawsuits and administrative actions initiated by plaintiff.

### A. Prior Litigation and Administrative Activity

From June 19, 2000 to March 25, 2004, plaintiff was employed by the USPTO as a patent examiner. On November 20, 2002, plaintiff filed suit in federal court alleging that the USPTO had subjected him to race, religion, and/or national origin-based hostile work environment, violated the Privacy Act by publicly disclosing his medical records, and retaliated against him for prior protected activity. *Al-Beshrawi v. United States of America, et al.*, 2002CV2287, transferred to E.D. Va. 2003CV1390 (hereinafter *Al-Beshrawi I)*. The trial court granted the USPTO summary judgment on the Privacy Act and retaliation claims. After a two-day trial beginning on March 23, 2004, the jury returned a verdict in favor of the USPTO on the hostile work environment claim.

On November 4, 2003, the USPTO issued plaintiff a Notice of Proposed Removal. The bases for the removal were the following: an alleged failure to follow supervisory instructions, unauthorized absences, and the taking of credit for hours not worked. On March 25, 2004, the day after the verdict in *Al-Beshrawi I*, the USPTO issued a formal decision removing plaintiff from his position as a patent examiner. Plaintiff appealed his removal to the Merit Systems Protection Board (MSPB). In his administrative appeal, plaintiff alleged that his removal was motivated by unlawful retaliation and violated the WPA. On May 23, 2005, the MSPB affirmed the administrative judge's findings that any alleged protected disclosures by plaintiff were not a contributing factor in his removal.

Plaintiff initiated a second civil action in the District Court for the District of Columbia on May 7, 2004. *Al-Beshrawi v. United States of America, et al.*, D.C., D.C., 2004CV743, transferred to E.D. Va. 2005CV1101 *(hereinafter Al-Beshrawi II)*. This action centered around plaintiff's previously filed EEO complaint, which alleged harassment on the basis of national origin and religion and raised the same allegations that were the focal point in the *Al-Beshrawi I* litigation. On January 13, 2006, the trial court entered summary judgment in favor of the defendants and dismissed the complaint.[7]

### B. The Present Action

Based upon plaintiff's pro se status, the Court liberally construes plaintiff's Third Amended Complaint. *See Hahn v. Star Bank*, 190 F.3d 708, 715 (6th Cir. 1999). While the specific causes of action are not entirely clear, it appears that plaintiff has raised a variety of allegations flowing from a work-related injury. In December, 2001, plaintiff fell at work and injured his back. It is undisputed that plaintiff was approved for, and did receive, approximately 25 days of temporary disability compensation. (Docket No. 41 at ¶ 24). Plaintiff maintains, however, that his supervisors concealed and falsified medical documentation relating to his back injury, and also interfered with claims relating to subsequent emotional injuries. According to plaintiff, these improper actions prevented plaintiff from receiving additional disability compensation, and led to the finding that he had been absent without leave. (Docket No. 41 at ¶¶ 33, 40-41).

According to plaintiff, he reported the wrongdoing associated with the handling of his

---

[7]A third lawsuit was initiated by plaintiff in the Arlington County Circuit Court (hereinafter *Al-Beshrawi III*). In this action, plaintiff alleged that he had been the victim of assault, slander, and libel by his supervisors at the USPTO. The action was removed to district court, where it was subsequently dismissed.

disability claim to the U.S. Commerce Department.  He also claims that he reported to the U.S. General Accounting Office certain incidents of mismanagement of time, waste, and fraud. (Docket No. 41 at Table). He maintains that his discharge was in retaliation for this protected activity. (Docket No. 41 at ¶ 101). Additionally, he claims that defendants retaliated against him for filing multiple charges of discrimination with the Equal Employment Opportunity Commission (EEOC).  (Docket No. 41 at ¶¶ 28-38, 40).

Following his discharge, plaintiff alleges that defendants defamed him by making the terms of his discharge available on-line. (Docket No. 41 at ¶¶ 133-135). Additionally, he claims that defendants wrongfully withheld compensation for work performed prior to his discharge by falsifying time sheets. (Docket No. 41 at ¶¶ 5, 110, 112-114, 118).

## II.  STANDARD OF REVIEW

Federal Rule of Civil Procedure 56(c) governs summary judgment motions and provides:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law . . ..

Rule 56(e) specifies the materials properly submitted in connection with a motion for summary judgment:

> Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein . . .. The court may permit affidavits to be supplemented or opposed by depositions, answers to interrogatories, or further affidavits. When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denial of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial.  If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

However, the movant is not required to file affidavits or other similar materials negating a claim on which its opponent bears the burden of proof, so long as the movant relies upon the absence of the essential element in the pleadings, depositions, answers to interrogatories, and admissions on file.  *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986).

In reviewing summary judgment motions, this Court must view the evidence in a light most favorable to the non-moving party to determine whether a genuine issue of material fact exists.  *Adickes v. S.H. Kress & Co.*, 398 U.S. 144 (1970); *White v. Turfway Park Racing Ass'n, Inc.*, 909 F.2d 941, 943-44 (6th Cir. 1990). A fact is "material" only if its resolution will affect the outcome of the lawsuit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Determination of whether a factual issue is "genuine" requires consideration of the applicable evidentiary standards. Thus, in most civil cases the Court must decide "whether reasonable jurors could find by a preponderance of the evidence that the [non-moving party] is entitled to a verdict." *Id*. at 252

Summary judgment is appropriate whenever the non-moving party fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial. *Celotex*, 477 U.S. at 322.  Moreover, "the trial court no longer has a duty to search the entire record to establish that it is bereft of a genuine issue of material fact." *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479-80 (6th Cir. 1989) (*citing Frito-Lay, Inc. v. Willoughby*, 863 F.2d 1029, 1034 (D.C. Cir. 1988)). The non-moving party is under an affirmative duty to point out specific facts in the record as it has been established which create a genuine issue of material fact. *Fulson v.City of Columbus*, 801 F. Supp. 1, 4 (S.D. Ohio 1992). The non-movant must show more than a scintilla of evidence to

overcome summary judgment; it is not enough for the non-moving party to show that there is some metaphysical doubt as to material facts. *Id*.

### III. DISCUSSION AND LAW

#### A. Res Judicata and Claim Preclusion

At the heart of defendants' dispositive motion lies the argument that most, if not all, of the claims in plaintiff's Third Amended Complaint are barred by the doctrine of res judicata. While plaintiff has attempted to couch his claims in terms of new constitutional violations, the allegations making up the majority of the claims in this litigation have been, or could have been, raised in prior lawsuits.[8]

The doctrine of res judicata actually encompasses two distinct concepts. Under the principle of claim preclusion, or "true" res judicata, "a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action." *Federated Dep't Stores, Inc. v. Moitie*, 452 U.S. 394, 398 (1981). Issue preclusion, or collateral estoppel, mandates that "[w]hen an issue of fact or law is actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment, the determination is conclusive in a subsequent action between the parties, whether on the same or a different claim*." Heyliger v. State Univ. & Community College Sys.*, 126 F.3d 849, 852 (6th Cir. 1997). Under Ohio law, issue preclusion "prevents parties or their prives from relitigating facts and issues in a subsequent suit that were fully litigated in a prior suit."

---

[8] Any review of plaintiff's Third Amended Complaint is hampered by the fact that the document does not set forth clear causes of action. Rather, this pleading merely presents one hundred ninety-one (191) separate allegations of wrongdoing. To add to the confusion, imbedded in the pleading is a table that attempts to chart plaintiff's protected activity and the retaliation he claims resulted therefrom. In light of plaintiff's *pro se* status, however, the Court has applied a liberal interpretation to his pleading. *See Hahn, supra* at 715.

*Thompson v. Wing*, 70 Ohio St. 3d 176, 183 (1994).[9] The obvious purpose of the doctrine of res judicata is to conserve judicial resources and to protect parties from the cost of litigating and relitigating the same matters in various forums. *See Allen v. McCurry*, 449 U.S. 90 (1980).

The Sixth Circuit employs a four-part test in determining whether res judicata bars claims raised in subsequent litigation. Specifically, res judicata applies where there exists: "(1) a final decision on the merits by a court of competent jurisdiction; (2) a subsequent action between the same parties or their privies; (3) an issue in the subsequent action which was litigated or which should have been litigated in the prior action; and (4) an identity of the causes of action." *Kane v. Magna Mixer Co.*, 71 F.3d 555, 560 (6th Cir. 1995). Applying this test, the Court finds that plaintiff's claims for hostile work environment, retaliation, Privacy Act violations, and WPA violations are all barred.

### 1. Retaliation and Hostile Work Environment

Throughout the Third Amended Complaint, plaintiff weaves allegations that his participation in various protected activity resulted in defendants taking retaliatory action against him. In particular, plaintiff alleges that in retaliation for his filing of charges of discrimination with the EEOC, his supervisors intentionally mishandled his disability claim for his work-related back injury. (Docket No. 41 at ¶¶ 28-38). Plaintiff maintains that by falsifying medical documentation relating to his claim, the claim was denied and plaintiff's absences from work were determined to be without leave. (Docket No. 41 at ¶¶ 33, 40-41). Ultimately, plaintiff

---

[9] Issue preclusion applies when the fact or issue "(1) was actually and directly litigated in the prior action, (2) was passed upon and determined by a court of competent jurisdiction, (3) when the party against whom [issue preclusion] is asserted was a party [or] in privity with a party to the prior action." *Becherer v. Merrill Lynch*, 193 F.3d 415, 422 (6th Cir. 1999) (*quoting Bittinger v. Tecumseh Prods. Co.*, 123 F.3d 877, 880 (6th Cir. 1997)).

alleges that his dismissal was predicated on absences that should have been excused as connected with a recognized disability. (Docket No. 41 at ¶ 101).

Plaintiff also raises a claim of discrimination based on national origin. Specifically, he maintains that, based on his national origin, his supervisors harassed and humiliated him. (Docket No. 41 at ¶¶ 22, 163-164). Additionally, plaintiff alleges that various defendants falsified documents relating to his employment and his medical claims based upon his heritage. (Docket No. 41 at ¶¶ 161-162).

It is clear from the record, however, that these very issues were raised and litigated in two prior lawsuits. In *Al-Beshrawi II*, the District Court for the Eastern District of Virginia, in granting summary judgment in favor of the defendants on the basis of res judicata, observed that the issue of hostile work environment had been resolved against plaintiff by a jury in *Al-Beshrawi I,* and the issue of retaliation, as it related to the mishandling of plaintiff's medical claims, the alleged use of falsified documents, and plaintiff's ultimate dismissal had also been litigated in *Al-Beshrawi I* to final judgment. (Docket No. 130-2 at p. 19).

The Court is satisfied that, with respect to the hostile work environment and retaliation claims, the elements for res judicata are present. The first and last elements have been met inasmuch as there were two final judgments on the merits in *Al-Beshrawi I* and *Al-Beshrawi II* on these very claims. Additionally, the privity requirement is satisfied because the present action involves the same parties or their privies. Plaintiff sued the U.S. Secretary of Commerce in his official capacity in all three actions. While some of the governmental defendants vary between the various lawsuits, "there is privity between officers of the same government so that a judgment in a suit between a party and a representative of the United States is res judicata in

relitigation of the same issue between that party and another officer of the government." *Sunshine v. Anthracite Coal Co. v. Adkins,* 310 U.S. 381, 402-03 (1940).

As for the third element, all of the allegations raised in the hostile work environment and retaliation claims were previously raised or could have been raised in prior litigation. While it is true that plaintiff had not yet been discharged from employment with the USPTO at the conclusion of *Al-Beshrawi I*, his discharge had become final prior to the filing of *Al-Beshrawi II*. Consequently, all claims relating to any hostile environment during his employment and any retaliatory conduct that may have led to his dismissal could have been raised in previous litigation.[10]

### 2. Privacy Act Claim

Plaintiff's claim under the Privacy Act is similarly barred by res judicata. In his Third Amended Complaint, plaintiff alleges that various defendants published on-line information regarding his discharge. (Docket No. 41 at ¶¶ 133-135). According to plaintiff, this conduct violated his constitutional rights, and prevented him from obtaining subsequent employment. (Docket No. 41 at ¶¶ 133 and 137).

This exact same claim was raised and litigated in *Al-Beshrawi II.* (Docket No. 130-2 at

---

[10]Plaintiff's Third Amended Complaint does contain allegations of retaliatory activity that occurred after the conclusion of the litigation in *Al-Beshrawi II*. (Docket No. 41 at ¶¶ 166-175). These allegations, however, do not raise any new claims. Rather, they relate to plaintiff's belief that defendants continue to falsify documents in connection with his disability claims. As previously ruled, this issue has been thoroughly litigated.

p. 11). Following briefing by the parties, the district court disposed of this claim by summary judgment on January 31, 2006. As such, plaintiff has already been afforded an opportunity to litigate this claim.

### 3. Whistleblowers Protection Act Claim

Numerous allegations in the Third Amended Complaint appear to raise a claim under the WPA. (Docket No. 41 at ¶¶ 120-131). In his brief in opposition to summary judgment, plaintiff explains that he exercised "his freedom of speech, expression, and duty as a U.S. citizen addressing Government officials on matters of public interest and concern, national security, illegal discrimination, nepotism, cronyisms, illegal and prohibited personnel practices, waste and mismanagement of government money and public funds among other things." (Docket No. 70 at p. 12). He maintains that the "whistleblowing disclosures . . . were contributing and motivating factors in the adverse personnel actions against him." (Docket No. 70 at p. 12). While plaintiff raised his alleged whistleblowing activity in his administrative appeal before the MSPB, he claims that the MSPB's decision upholding his termination was arbitrary, capricious, and abusive. (Docket No. 70 at p. 12).

The district court in *Al-Beshrawi II* reviewed the decision of the Administrative Law Judge and determined that there was no evidence that the decision represented an abuse of discretion. (Docket No. 130-2 at p. 26). Finding that the MSPB had not acted arbitrarily or capriciously, the *Al-Beshrawi II* Court dismissed plaintiff's WPA claim.[11] (Docket No. 130-2 at p. 28). In light of the fact that plaintiff's whistleblowing claim has already been litigated to a

---

[11] Defendants invite the Court to independently review the decision of the MSPB. Finding that the *Al-Beshrawi II* Court has already thoroughly review the decision and applied the appropriate standard in rendering its decision, this Court will decline the invitation.

final judgment, res judicata prevents plaintiff from raising it again.[12]

## B. Reviewability of FECA Claim

Plaintiff's Third Amended Complaint could also be interpreted as raising a claim under the Federal Employees' Compensation Act (FECA), 5 U.S.C. §§ 1101 et seq. Relying primarily upon allegations that the Employees' Compensation Appeals Board (ECAB) failed to properly weigh the evidence and may have concealed or disregarded material facts, plaintiff alleges that defendants interfered with his right to obtain compensation under FECA for his back injury and subsequent emotional injuries. (Docket No. 41 at ¶¶ 58-59, 73-94). To the extent that plaintiff is also attempting to challenge the decisions of the ECAB in denying his disability claims, the claim must be dismissed because the Court lacks jurisdiction to review the FECA benefit determinations. (Docket No. 41 at ¶¶ 84-85, 93-94).

The Federal Employment Compensation Act provides a comprehensive compensation scheme for federal employees. Under the FECA, "the United States will pay compensation for disability and death of an employee resulting from personal injury sustained while in the performance of his duties . . .." 5 U.S.C. § 8102(a). The statutory scheme set forth in the Act provides an exclusive remedy for federal employees suffering from work-related injuries. 5 U.S.C. § 8116. Following a determination on a disability claim, FECA provides numerous opportunities for administrative review, culminating with an appeal to the ECAB. 5 U.S.C. § 8128. Congress has specifically foreclosed judicial review of determinations under FECA. 5 U.S.C. § 8128(b). *McDaniel v. United States,* 970 F.2d 194, 197 (6th Cir. 1992); *Owens v. Brock*,

---

[12]In his responsive brief, plaintiff now argues that not all of the protected disclosures he made to 48 different government officials were presented to the MSPB. (Docket No. 70 at p. 12). Plaintiff had the opportunity, however, to avail himself of this argument in the District Court for the Eastern District of Virginia.

860 F.2d 1363, 1367 (6th Cir. 1988).

A limited exception to the exclusivity of the FECA review process is recognized for cases involving "clear violations of FECA's statutory mandate." *Lepre v. DOL, Emple. Compensation Appeals Bd.*, 275 F.3d 59, 73 (D.C. Cir. 2001). While plaintiff claims that the ECAB's actions in processing his claims have resulted in a procedural due process violation, it is clear that he is merely taking issue with the final result of each of his claims. Plaintiff is welcome to continue to avail himself of the administrative review process of FECA, which courts have found provides ample due process to claimants. *Stuto v. Fleishman*, 164 F.3d 820, 825-27 (2d Cir. 1999); *Raditch v. United States*, 929 F.2d 478, 480 (9th Cir. 1991). Judicial review by this Court, however, is inappropriate.

### C. Exhaustion of Administrative Remedies for FECA

A fair reading of the Third Amended Complaint would suggest that plaintiff has attempted to raise a second cause of action relating to his FECA claims. Specifically, plaintiff has brought a separate claim under the Privacy Act to amend his FECA claim files, and alleges that defendants have interfered with his attempts to amend his files. (Docket No. 41 at ¶¶ 61-69, 79, 142, 162, 167-168, 171, 173-175, 180). In support of summary dismissal, defendants argued that plaintiff has failed to exhaust his administrative remedies regarding this claim.

The Privacy Act authorizes an individual to request amendments to his own records. 5 U.S.C. § 552a(d)(2). With respect to requested amendments, the Privacy Act requires the individual to exhaust his administrative remedies before he seeks redress before the district court under 5 U.S.C. § 552a(g)(1)(A). *Williams v. Bezy*, 2004 WL 95970 (6th Cir. 2004); *Taylor v. United States Treasury Dep't.*, *IRS*, 127 F.3d 470, 476-78 (5th Cir. 1997).

Plaintiff has not alleged, and the record is devoid of any evidence, that he has exhausted his administrative remedies with respect to any requests he may have made to amend his FECA claim files. Until such time that plaintiff has properly availed himself of the administrative review process, the matter cannot be reviewed by this Court.

### D. Exemption under FLSA

Plaintiff also appears to have raised a claim under the FLSA for wages he alleges were wrongfully withheld from him by the USTPO. (Docket No. 41 at ¶¶ 5, 110, 112-114, and 118). In support of summary judgment on this claim, defendants argue that plaintiff was exempt from coverage under the FLSA. This argument is well taken.

The FLSA exempts from coverage "executive, administrative, and professional" employees. 29 U.S.C. § 213(a)(1). Plaintiff was originally hired by the USPTO as a patent examiner at the GS-9 grade level. (Docket No. 53-K at ¶ 4). By the time he had been discharged, he had reached the grade level of a GS-13 patent examiner. At the USPTO, all patent examiners at the grade level GS-9 and above are exempt from FLSA coverage based on the "professional" exemption. (Docket No. 53-K at ¶ 1).

Additionally, the USPTO relies on its own Standard Operating Procedure (SOP), to determine exemptions from coverage. In accordance with the USPTO's SOP, all patent examiner positions at GS-9 and above are exempt from FLSA coverage. (Docket No. 53-K at ¶ 3).

Plaintiff argues, however, that he was not exempt because he never "practiced his profession or specialization" and was required to apply specific guidelines in administering his duties. (Docket No. 70 at p. 14). Regardless of his subjective views on the nature of his work, the fact remains that, throughout his tenure at the USPTO, he was in a position that was exempt from

FLSA coverage. As was the case with the other claims in the Third Amended Complaint, the FLSA claim cannot survive summary judgment.

Indeed, it is clear that none of plaintiff's claims survive summary judgment. While plaintiff has attempted to put a new spin on old claims relating to his past employment with the USTPO, the majority of the claims raised in the present action are merely a rehashing of claims raised in prior litigation. Those claims that are new either should have been raised in prior litigation or are not properly before this Court, as set forth above.[13]

### E. Individually Named Defendants Employed by the OWCP

Defendants maintain that even if certain claims were to survive summary judgment, no cause of action can be maintained against the individually named defendants employed by the OWCP (hereinafter "individual OWCP defendants"). In the Third Amended Complaint, plaintiff alleges that the individual OWCP defendants interfered with his FECA claims. (Docket No. 41 at ¶¶ 37, 49, 51-52, 57-60, 64-74, 80, 91-93). It is defendants' position that a *Bivens*-type claim is not available against the individual OWCP defendants for plaintiff's FECA claim, and that qualified immunity protects these defendants from any liability with respect to any constitutional claims. *See Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971).

The Court need not reach the question of whether plaintiff can bring a *Bivens*-type claim

---

[13]Plaintiff also attempts to raise a claim under the Americans' with Disability Act, 42 U.S.C. § 12112 *et seq.*, and the Rehabilitation Act, 29 U.S.C.§ 791 *et seq.*, by claiming that defendants failed to accommodate plaintiff's "work related injury disability." (Docket No. 41 at ¶¶ 2, 138). While the Rehabilitation Act provides a federal employee with his exclusive remedy for employment related discrimination based on a disability, plaintiff had the opportunity to raise this claim in *Al-Beshrawi II. See* 42 U.S.C. § 12111(5)(B). *See also Peltier v. United States*, 388 F.3d 984, 989 (6th Cir. 2004). Consequently, the doctrine of claim preclusion prevents him from raising it here.

because plaintiff has failed to state a claim for the denial of due process. The "better approach" to resolving such cases is "to determine first whether the plaintiff has alleged a deprivation of a constitutional right at all. Normally, it is only then that a court should ask whether the right allegedly implicated was clearly established at the time of the events in question." *County of Sacramento v. Lewis*, 523 U.S. 833, 841 at n. 4 (1998).

It is clear that plaintiff's disability benefits under FECA constitute a valid property interest. *Stuto v. Fleishman*, 164 F.3d 820, 825 (2nd Cir. 1999). *See Raditch v. United States*, 929 F.2d 478, 480 (9th Cir. 1991)(recognizing a property interest in FECA benefits); *see also Mathews v. Eldridge*, 424 U.S. 319, 442 (1976)(recognizing a property interest in Social Security benefits). Plaintiff argues that the individual OWCP defendants intentionally deprived him of his property interest by interfering with the proper processing of his FECA claims. (Docket No. 41 at ¶¶ 37, 49, 51-52, 57-60, 64-74, 80, 92-93). However, even the intentional deprivation of property through the random and unauthorized acts of a state or federal employee does not constitute a deprivation of due process if "a meaningful post-deprivation remedy for the loss is available." *Hudson v. Palmer*, 468 U.S. 517, 533 (1984). Here plaintiff had available to him an entire menu of possible post-deprivation remedies under the extensive statutory framework of the FECA. That plaintiff "might not be able to recover under these remedies the full amount which he might receive in a [*Bivens*-type] action is not . . . determinative of the adequacy of the [administrative] remedies." *Hudson*, 468 U.S. at 535.

Plaintiff alleges that the individual OWCP defendants intentionally withheld medical documentation connected with his FECA claims. (Docket No. 41 at ¶ 49). Similar allegations were made by the plaintiff in *Stuto*. There, the plaintiff maintained that the individually named

defendants purposefully suppressed a doctor's report until after the ECAB had rendered its decision. *Stuto*, 164 F.3d at 826. In refusing to find a deprivation of due process, the court observed that the plaintiff had a variety of avenues of recourse available to him, such as an oral hearing on his claims and reconsideration. *Id.* at 826. Likewise, plaintiff had adequate post-deprivation remedies available to him.[14] As such, no claim can exist against the individual OWCP defendants.

---

[14]Of course, had a constitutional deprivation of property taken place, the individual OWCP defendants would have been protected from liability by the doctrine of qualified immunity. Under this doctrine, "government officials performing discretionary functions" enjoy protection from damages "so long as their actions could reasonably have been thought consistent with the rights they are alleged to have violated." *Anderson v. Creighton*, 483 U.S. 635, 638 (1987). It is clear from the Third Amended Complaint that all of the individual OWCP defendants were acting within the scope of their employment in the Office of Workers' Compensation Programs when they participated in the administration of plaintiff's FECA claims. Consequently, they would enjoy qualified immunity.

## IV.  CONCLUSION

For the foregoing reasons, defendants' motion for summary judgment is granted in its entirety. This case is dismissed.

**IT IS SO ORDERED**.


Dated:  April 23, 2007                                          s/  *Sara Lioi*
                                                                Sara Lioi
                                                                United States District Judge